UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 7 WEST 57TH STREET REALTY COMPANY, LLC, a Delaware Limited Liability Company,<br><br>　　　　　　　Plaintiff,<br><br>　　　　vs.<br><br>CITIGROUP, INC., CITIBANK, N.A., BANK OF AMERICA CORP., BANK OF AMERICA N.A., BARCLAYS BANK PLC, UBS AG, JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, CREDIT SUISSE GROUP AG, BANK OF TOKYO-MITSUBISHI UFJ LTD., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, HBOS PLC, LLOYDS BANKING GROUP PLC, ROYAL BANK OF CANADA, THE NORINCHUKIN BANK, ROYAL BANK OF SCOTLAND GROUP, PLC, WESTLB AG, WESTDEUTSCHE IMMOBILIENBANK AG, DEUTSCHE BANK AG,<br><br>　　　　　　　Defendants. | Civil Action No. 13-cv-0981<br><br>ECF Case<br><br>ORAL ARGUMENT REQUESTED |

**PLAINTIFF 7 WEST 57th STREET REALTY COMPANY LLC'S
SUPPLEMENTAL MEMORANDUM
<u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

**TABLE OF CONTENTS**

I.   INTRODUCTION. ........................................................................................................... 1

II.  SUBSEQUENT INVESTIGATIONS. ........................................................................... 2

III. SUBSEQUENT LEGAL DEVELOPMENTS. ............................................................... 4

   A.  *Gelboim v. Bank of America Corp.*, Supreme Court No. 13-1174. ...................... 4

   B.  Antitrust Injury ........................................................................................................ 4

   C.  Causation .................................................................................................................. 8

IV.  RICO DEVELOPMENT. ............................................................................................. 11

V.   CONCLUSION. ............................................................................................................ 14

# **TABLE OF AUTHORITIES**

*Atlantic Richfield Co. v. USA Petroleum Co.*
    495 U.S. 328 (1990)..................................................................................................5

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*
    429 U.S. 477 (1977)..................................................................................................5

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*
    750 F.3d 227 (2d Cir. 2014).......................................................................................8

*Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*,
    Case No. 12-cv-5329 (SAS), Doc. No. 103 at 7 (S.D.N.Y. Oct. 20, 2014)...................10

*European Community v. RJR Nabisco, Inc.*
    764 F.3d 129 (2d Cir. 2014)...............................................................................*passim*

*European Community v. RJR Nabisco, Inc.*
    2014 U.S. App. LEXIS 15998 (2d Cir. Aug. 20, 2014) ................................................11

*Fisher v. Aurora Health Care, Inc.*
    558 Fed. Appx. 653 (7th Cir. 2014)............................................................................6

*Food Lion, LLC v. Dean Foods Co. (In re Southeastern Milk Antitrust Litigation)*
    739 F.3d 262 (6th Cir. 2014) .............................................................................6, 7, 8

*Galope v. Deutsche Bank Nat'l Trust Co.*,
    566 Fed.Appx. 552 (9th Cir. 2014)............................................................................7

*Gatt Commc'ns v. PMC Assocs., LLC*
    711 F.3d 68 (2d Cir. 2013).........................................................................................5

*Gelboim v. Bank of Am. Corp.*
    Supreme Court No. 13-1174 .....................................................................................4

*Gelboim v. Bank of Am. Corp.* (*In re LIBOR-Based Fin. Instruments Antitrust Litig.*)
    2013 U.S. App. LEXIS 26157 (2d Cir. Oct. 30, 2013).....................................................4

*In the Matter of: Lloyds Banking Group PLC and Lloyds Bank PLC*
    CFTC Docket No. 14-18..............................................................................................3

*In re DDAVP Direct Purchaser Antitrust Litig*.
    585 F.3d 677 (2d Cir. 2009).......................................................................................4

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*
    935 F.Supp.2d 666 (S.D.N.Y. 2013)............................................................................5

*In re Publ'n Paper Antitrust Litig.*,
  690 F.3d 51 (2d Cir. 2012) ..................................................................................... 5

*JetAway Aviation, LLC v. Bd. Of County Comm'rs*
  754 F.3d 824 (10th Cir. 2014) ............................................................................... 6

*Laydon v. Mizuho Bank, Ltd.*
  No. 12-cv-3419 (GBD), 2014 U.S. Dist. LEXIS 46368
  (S.D.N.Y. Mar. 18, 2014) ................................................................................. 5, 6

*Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*
  762 F.3d 1114 (10th Cir. 2014) ............................................................................ 6

*N. Pac. R.R. Co. v. United States*
  356 U.S. 1 (1958) ................................................................................................. 5

*Reich v. Lopez*, No. 13-CV-5307 (JPO)
  2014 U.S. Dist. LEXIS 115079 (S.D.N.Y. Aug. 18, 2014) ........................... 12, 13

*Tymoshenko v. Firtash*,
  2014 U.S. Dist. LEXIS 139266 (S.D.N.Y. Sept. 30, 2014) ................................ 14

*Tyco Healthcare Group LP v. Mutual Pharm. Co.*,
  2014 U.S. App. LEXIS 15096 (Fed. Cir. Aug. 6, 2014) .................................. 5, 6

*United States v. Lloyds Banking Group PLC*
  Case No. 3:14-CR-165 (MPS) .............................................................................. 3

*United States v. Robson et al.*
  Case No. 1:14-CR-00272 (S.D.N.Y.) ................................................................... 2

*United States v. Socony-Vacuum Oil Co.*
  310 U.S. 150 (1940) ............................................................................................. 5

Plaintiff 7 West 57th Street Realty Company ("Plaintiff") respectfully submits this supplemental memorandum in opposition to Defendants'[1] Motion to Dismiss Plaintiff's First Amended Complaint ("FAC") (ECF No. 114).

## I.   INTRODUCTION.

Plaintiff seeks to recover the damages to borrower-assignor Sheldon Solow resulting from Defendants' scheme to manipulate LIBOR. Defendants filed a motion to dismiss Plaintiff's FAC, and the motion was fully briefed by December 13, 2013. (*See* ECF Nos. 114-122).[2] The Court has stayed discovery pending resolution of the motions to dismiss. (ECF No. 107).

On September 30, 2014, Plaintiff suggested that the Court might appreciate limited supplemental briefing in light of recent developments in other LIBOR-related cases. On October 17, 2014, the Court approved Plaintiff's request (ECF No. 132); it also brought to the parties' attention an important case that is relevant to Plaintiff's RICO claim, *European Community v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014). This brief addresses both the recent developments in LIBOR-related cases since the motion to dismiss was fully briefed, and the impact of the *European Community* case on Plaintiff's RICO claims.

---

[1] The Defendants are Citigroup, Inc. Citibank, N.A., Bank of America Corp., Bank of America N.A., Barclays Bank PLC, UBS AG, JPMorgan Chase & Co., JPMorgan Chase Bank, N.A., Credit Suisse Group AG, Bank of Tokyo-Mitsubishi UFJ Ltd., Coöperatieve Centrale Raiffeisen-Boerenleenbank B.A., HSBC Bank PLC, HBOS PLC, Lloyds Banking Group PLC, Royal Bank of Canada, The Norinchukin Bank, Royal Bank of Scotland Group, PLC, WestLB AG, Westdeutsche Immobilienbank AG, and Deutsche Bank AG, and are referred to herein collectively as "Defendants."

[2] The briefing focused on two different sets of arguments. Defendants filed two separate briefs in support of their motion to dismiss; Plaintiffs responded with two separate briefs opposing the motion based on the arguments in the respective briefs; Defendants then filed two Reply briefs. Defendants' first brief (ECF No. 115) claims dismissal is warranted on the grounds of failure to state a claim and statutes of limitations. The second brief (ECF No. 117) raises objections to Plaintiff's standing and arguments related to prior litigation between Solow and one Defendant – Citibank.

1

**II.     SUBSEQUENT INVESTIGATIONS.**

The FAC, filed on June 11, 2013, details numerous worldwide governmental investigations into Defendants' LIBOR manipulation.  FAC ¶¶56-126.  These allegations include guilty pleas, admissions and other evidence that demonstrates Defendants' collusion and manipulation of LIBOR.[3]  Subsequent to the briefing of the motion to dismiss, the investigations have gone forward and certain Defendants have been sentenced and paid additional fines, as well as admitting additional facts consistent with Plaintiff's allegations.

- Six individuals have now been charged by the United States Department of Justice ("DOJ") in the investigation of Rabobank.  Anthony Allen and Anthony Conti have been indicted with conspiracy to commit wire fraud and bank fraud and with substantive counts of wire fraud "for their participation in a scheme to manipulate the USD and Yen LIBOR rate in a manner that benefitted their own or Rabobank's financial positions in derivatives…"  Charged earlier were Tetsuya Motomura and Paul Thompson.  Paul Robson and Takayuki Yagami each pleaded guilty earlier this year to one count of conspiracy in connection with their roles in the scheme.[4]

- Lloyds Banking Group PLC has entered into an agreement with the U.S. and the U.K. Financial Authority (FCA) to pay a $370 million fine, consisting of $105 million to the CFTC, $86 million to the DOJ, and £105 ($178 million) in conjunction with Bank of Scotland PLC to the FCA, for manipulation of submissions for LIBOR.  The criminal information charges Lloyds with wire fraud.  The bank admitted and accepted responsibility for its misconduct as described in an extensive statement of facts.  Assistant Attorney General Caldwell said that "For more than three years, traders at Lloyds manipulated the bank's LIBOR submissions for three currencies to benefit the trading positions of themselves and their friends, to the detriment of the parties on the other side of the trades."[5]  An example of a communication from a Lloyds banker to an

---

[3] Plaintiff cites to new information in the public record after the filling of the Complaint.  If the Court grants Defendants' motion to dismiss, in whole or in part, Plaintiff requests leave to amend to include this type of information and related allegations.

[4] Press Release, U.S. Dep't of Justice, Two Former Rabobank Traders Indicted for Alleged Manipulation of U.S. Dollar, Yen LIBOR Interest Rates (Oct. 16, 2014) http://www.justice.gov/atr/public/press_releases/2014/309296.htm.  *United States v. Robson et al.,* Case No. 1:14-CR-00272 (S.D.N.Y.).

[5] Press Release, U.S. Dep't of Justice, Lloyds Banking Group Admits Wrongdoing in LIBOR Investigation, Agrees to Pay $86 Million Criminal Penalty (Jul. 28, 2014) http://www.justice.gov/atr/public/press_releases/2014/307355.htm; Press Release, U.S.

> HBOS trader was "Oh mate, I have always got loads of loans going out at the end of the month *so I always try and fix it higher*."

- RBS Securities Japan Limited, a wholly owned subsidiary of The Royal Bank of Scotland PLC (RBS) was sentenced for its role in manipulating LIBOR. The DOJ's penalties brought the total amount of the resolution with RBS and RBS Securities Japan to approximately $612 million. According to the plea agreement, "derivatives traders engaged in efforts to move LIBOR in a direction favorable to their trading positions." Some traders did so to "increase their profits and decrease their losses." [6]

- The European Commission announced €94 million ($119.6 million) in settlements against J.P. Morgan, UBS, and Credit Suisse on October 21, 2014 in connection with cartels that fixed the price of the Swiss franc-denominated LIBOR. RBS avoided a fine of around €10 million by reporting first. In cases before European Commission participants' national courts, a Commission decision is binding proof that the behavior took place and was illegal.[7]

- In addition to the criminal settlements, Barclays PLC agreed to pay nearly $20 million to settle a class action accusing the bank of manipulating LIBOR in the multi-district litigation.[8]

- In October 2014, a high-ranking banker whose name and bank were not released entered a guilty plea for his role in manipulating LIBOR in the U.K. Eleven other

---

Commodity Futures Trading Comm'n, CFTC Charges Lloyds Banking Group and Lloyds Bank with Manipulation, Attempted Manipulation, and False Reporting of LIBOR (Jul. 28, 2014) http://www.cftc.gov/PressRoom/PressReleases/pr6966-14; Max Colchester, *Lloyds Pays $370 Million to Settle Rate Probe*, Wall St. J., Jul. 28, 2014, http://online.wsj.com/articles/lloyds-banking-group-fined-over-libor-1406551340. *In the Matter of: Lloyds Banking Group PLC and Lloyds Bank PLC*, CFTC Docket No. 14-18, http://www.cftc.gov/ucm/groups/public/@lrenforcementactions/documents/legalpleading/enflloydsorderdf072814.pdf; United States v. Lloyds Banking Group PLC, Case No. 3:14-CR-165 (MPS), Criminal Information, http://www.justice.gov/atr/cases/f307500/307532.pdf; FCA Notice to Lloyds Bank PLC and Bank of Scotland PLC, Firm Reference Numbers 119278 and 169628, http://online.wsj.com/public/resources/documents/072814fca.pdf.

[6] Press Release, U.S. Dep't of Justice, RBS Securities Japan LTD Sentenced for Manipulation of Yen LIBOR (Jan. 6, 2014) http://www.justice.gov/atr/public/press_releases/2014/302785.htm.

[7] Cara Salvatore, *JPMorgan, UBS, Credit Suisse Pay €94M Over Rate-Rigging*, Law 360, Oct. 21, 2014, https://www.law360.com/articles/588816.

[8] *Id.*

people await criminal trial, part of the U.K. investigation that began more than two years ago.[9]

### III. SUBSEQUENT LEGAL DEVELOPMENTS.

#### A. *Gelboim v. Bank of America Corp.*, Supreme Court No. 13-1174.

Defendants' Motion to Dismiss relied significantly on Judge Buchwald's March 29, 2013 decision in *LIBOR MDL*, essentially attacking a straw man given the significant differences between the complaint at issue in the multi-district litigation and Plaintiff's FAC. The decision is currently before the Supreme Court on a procedural issue. A group of investors whose antitrust claims had been dismissed appealed Judge Buchwald's decision to the Second Circuit, which dismissed the appeal for lack of jurisdiction because the other consolidated cases had not been dismissed. *Gelboim v. Bank of Am. Corp.* (*In re LIBOR-Based Fin. Instruments Antitrust Litig.*), 2013 U.S. App. LEXIS 26157, 2014-1 Trade Cas. (CCH) P78,819, 2013 WL 9557843 (2d Cir. Oct. 30, 2013). After rehearing was denied, the investors appealed to the Supreme Court, which granted certiorari on June 30, 2014 on the question of whether and in what circumstances the dismissal of an action that has been consolidated with other suits is immediately appealable. The case, *Gelboim v. Bank of America Corp.*, Supreme Court No. 13-1174, is currently being briefed and is set for argument on December 9, 2014. If the Supreme Court determines that the cases were immediately appealable, it will likely remand to the Second Circuit for a decision on the merits.

#### B. Antitrust Injury

Antitrust standing exists where a Plaintiff alleges "antitrust injury" and is an "efficient enforcer" of the antitrust laws. *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 688 (2d Cir. 2009) (citations omitted). Defendants erroneously claim Plaintiff has not suffered antitrust

---

[9] *Id.*

4

injury (s*ee* ECF No. 115 at 25); but as addressed in Plaintiff's Opposition to Defendants' Motion to Dismiss (*see* ECF No. 119 at 28), this is incorrect.

Neither the Supreme Court, nor any Courts of Appeal, have applied the theory of antirust injury in the manner urged by defendants here—in a case by a consumer and market participant alleging a *per se* horizontal conspiracy[10] among competitors.[11]  Nor have the Supreme Court or the Courts of Appeal applied the theory as Defendants request since the close of briefing on Defendants' motion to dismiss.  Since then, only a handful of Court of Appeals decisions have addressed antitrust injury in more than summary fashion, and they have not dealt with consumers, like Solow, who are market participants.[12]  *See Tyco Healthcare Group LP v. Mutual Pharm. Co.*,

---

[10]  Horizontal price-fixing as alleged here has long been held to inherently corrupt competition. *See, e.g., United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 220 (1940) (horizontal price-fixing "obviously reduced the play of the forces of supply and demand"); *N. Pac. R.R. Co. v. United States*, 356 U.S. 1, 5 (1958) (price-fixing agreements *per se* unlawful and "because of their pernicious effect on competition and lack of any redeeming virtue are conclusively presumed to be unreasonable and therefore illegal without elaborate inquiry as to the precise harm they have caused or the business excuse for their use"); *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 67 (2d Cir. 2012) (price-fixing agreements *per se* illegal because they are "so likely to result in artificially higher prices being charged to consumers without accomplishing any legitimate business purpose").

[11]  Rather, as in the Supreme Court's seminal case of *Pueblo Bowl-o-Matic v. Brunswick*, the theory has most often been applied in actions brought by competitors – who are seeking redress from competition itself.  *See Brunswick*, 429 U.S. 477 (complaint about lost profits because *competitor* Brunswick stayed in the local market and operated bowling alleys, rather than foreclosing on defaulted equipment loans and taking the defaulting alleys out of business); *Atlantic Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328 (1990) (*ARCO*) (complaint about vertical conspiracy by *competitors* to lower retail prices in order to squeeze independent gasoline stations out of market); *Gatt Commc'ns v. PMC Assocs., LLC*, 711 F.3d 68, 76 (2d Cir. 2013) (antitrust laws were "not concerned with injuries to *competitors*" like Plaintiff, who had not been forced to pay higher prices for a product, where injuries resulted from "participation in or exile from" price-fixing scheme) (emphasis in original).

[12] In March, Judge Daniels issued an opinion in *Laydon v. Mizuho Bank, Ltd.*, No. 12-cv-3419 (GBD), 2014 U.S. Dist. LEXIS 46368 (S.D.N.Y. Mar. 18, 2014).  *Laydon* relies on *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F.Supp.2d 666 (S.D.N.Y. 2013).  As discussed extensively in Plaintiff's opposition to Defendants' motion to dismiss (ECF No. 119 at 24), there

No. 2013-1386, 2014 U.S. App. LEXIS 15096, 2014-2 Trade Cas. (CCH) P78,866; 2014 WL 3844166 (Fed. Cir. Aug. 6, 2014) (remanding for further proceedings because Mutual Pharmaceutical Company might have suffered antitrust injury at the hands of *competitor* Tyco, when Tyco filed a citizen petition that may have delayed FDA approval of Mutual's generic version of Tyco's drug Restoril); *JetAway Aviation, LLC v. Bd. Of County Comm'rs*, 754 F.3d 824 (10th Cir. 2014) (JetAway could not show antitrust injury when *competitor* Jet Center Partners, LLC was awarded a government contract, allegedly as part of a manipulated selection process; separate concurrences differed as to the reasoning, with Judge Holmes relying on the principle that antitrust laws do not prevent one monopolist from taking the place of another and Judge Tymkovich relying on the principle that the injuries alleged by JetAway did not satisfy the competition-reducing requirement for antitrust injury); *Lenox MacLaren Surgical Corp. v. Medtronic, Inc.*, 762 F.3d 1114 (10th Cir. 2014) (district court improperly granted summary judgment, because Lenox presented sufficient evidence to support a finding on each element of a Section 2 claim against *competitor* Medtronic, including harm to competition and thus antitrust injury); *Fisher v. Aurora Health Care, Inc.*, 558 Fed. Appx. 653; 2014 U.S. App. LEXIS 4469; 2014-1 Trade Cas. (CCH) P78,707; 2014 WL 929179 (7th Cir. 2014) (unpublished) (physician was not most efficient enforcer and thus lacked antitrust injury when hospital refused to renew his medical staff privileges; patient-consumers or insurers were more appropriate enforcers).

The only Court of Appeals cases that are on point, involving market participant consumers, are *Food Lion, LLC v. Dean Foods Co. (In re Southeastern Milk Antitrust Litigation)*, 739 F.3d 262 (6th Cir. 2014) (reversing grant of summary judgment because Plaintiffs created a genuine

---

are significant differences between the *LIBOR MDL* and the instant case; both the *LIBOR MDL* and *Laydon* are inapposite and non-binding here.

issue of material fact as to antitrust injury, discussed in detail *infra*) and *Galope v. Deutsche Bank Nat'l Trust Co.*, 566 Fed.Appx. 552, 2014 U.S. App. LEXIS 5686; 2014-1 Trade Cas. (CCH) P78,721; 2014 WL 1244279 (9th Cir. 2014) (finding injury-in-fact where plaintiff "adequately alleged that she would not have purchased her loan had she known that the Defendants were manipulating the LIBOR rate" and remanding for further proceedings under the Sherman Act §§1-2).

In *Food Lion,* the district court had concluded that Plaintiffs' expert regression analysis could measure only the effect of a merger, rather than the Plaintiffs' true injury from the anticompetitive actions of horizontal competitors during that merger. 739 F.3d at 284. The Sixth Circuit found that conclusion to be "based on flawed propositions," and found that the regression model revealed three conclusions which, taken together, could be viewed as evidence of antitrust injury: (1) "Plaintiffs purchased [a product] from the Defendants;" (2) "after the merger Plaintiffs were charged 7.9% more for [the product];" and (3) "evidence indicated that [Defendants] conspired to avoid competing vigorously." *Id.* at 285.

In the instant case, (1) Mr. Solow was similarly situated to the Food Lion purchasers as a non-competitor market participant who borrowed money, paid-LIBOR-denominated interest and pledged collateral to Defendant Citibank; (2) after the LIBOR manipulation, Mr. Solow was "charged more" in collateral for his loan, so much so that he paid the even higher price of having his collateral sold at rock bottom prices; and (3) Defendants conspired to avoid competing in setting LIBOR. The corruption of the competitive process by collusion among horizontal competitors, detailed in the FAC (¶¶145-163, 178), constitutes antitrust injury. "[W]hen competition is limited pursuant to an agreement and customers are punished through higher prices,

7

the injury clearly results from anticompetitive conduct," which is "precisely the kind of injury that the Sherman Act was designed to prevent." *Food Lion*, 739 F.3d at 286.

### C. Causation

Defendants contend that Plaintiff cannot show that Solow's injuries were caused by their manipulation of the LIBOR, that his injury is too attenuated and speculative. As Plaintiff noted in its opposition to Defendants' motion to dismiss, this is incorrect; Plaintiff has over $600 million in damages, directly caused by Defendants' collusion. *See* ECF No. 119, at 43; *see also* FAC ¶¶ 145-163, 178. Nonetheless, Defendants argue that Plaintiff's injuries were caused by the recession. *See* ECF No. 115 at pg. 37 ("the far more plausible explanation is that banks were independently reacting to the financial crisis").

*Food Lion* rejected similar arguments, which should not be addressed at the motion to dismiss stage. The *Food Lion* defendants attributed higher prices to the underlying merger rather than the anticompetitive activities they engaged in during the merger. But the plaintiffs in *Food Lion* were not required to show at the summary judgment stage that the increased prices were due to the anticompetitive activities instead of the merger alone; it was enough that they created genuine issues of material fact. *Id.* At the motion to dismiss stage, the burden is much less and all allegations must be taken as true. Defendants' arguments that attribute Solow's losses to the recession, much like the arguments that attributed the price increases to the merger, are irrelevant until it is time for the factfinder to determine causation.

In *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227 (2d Cir. 2014), the Second Circuit vacated and remanded after the Southern District of New York dismissed the plaintiffs' securities claims against Barclays relating to LIBOR manipulation. The Second Circuit's decision was based in part on its determinations that "the District Court erred in

8

concluding, *prior to any discovery*, that plaintiffs failed to plead loss causation;" Plaintiffs' allegations linking Barclay's decline in stock price to the revelation of its participation in the LIBOR manipulation presented "a plausible claim." *Id.* at 230 (emphasis added).

The district court reasoned that any share inflation Plaintiffs might have suffered as a result of LIBOR manipulation would have been rectified by an efficient market, so Plaintiffs had not plausibly alleged loss causation. *Id.* at 232. The Second Circuit disagreed with that evaluation of the complaint at the motion to dismiss stage, explaining, "While expressing no view on the ultimate merits of plaintiffs' theory of loss causation, we hold the court below reached these conclusions prematurely… The complaint plausibly alleges that submission rates are non-cumulative—that is, that each day's submission rates reveal information about a bank's borrowing costs for that particular day." *Id.* at 234. The court refused to conclude "as a matter of law and without discovery" that Plaintiffs' allegations were incorrect, because loss causation "is a question of fact that can be answered only upon a more fully developed record." *Id.* at 234-235. *Carpenter's* is on point here. Plaintiff's complaint should not be dismissed before discovery; its allegations should be accepted as true, particularly with regard to causation.

The Second Circuit noted that the plaintiffs "need not demonstrate on a motion to dismiss that the corrective disclosure [that Barclays had engaged in LIBOR manipulation] was the *only* possible cause for decline in the stock price;" the plaintiffs were not burdened with "pleading that *no other possible event* could have caused plaintiffs' losses." *Id.* at 233 (citations omitted, emphasis in original). Similarly, Plaintiff should not be required to demonstrate the LIBOR manipulation was the *only* possible cause for the decrease in value of the Solow bonds at the motion to dismiss stage, despite Defendants' assertions to the contrary.

On remand, the District Court found that "Barclay's repeated, long-term, and knowing submission of false rates suggests far more than an intent to violate BBA rules.  Rather, this conduct constitutes strong circumstantial evidence of conscious misbehavior or recklessness." *Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, Case No. 12-cv-5329 (SAS), Doc. No. 103 at 7 (S.D.N.Y. Oct. 20, 2014) (citations omitted).  When the Court viewed "all inferences in favor of Plaintiffs, Barclays's conduct was – at the very least – highly unreasonable and an extreme departure from the standards of ordinary care." *Id.* at 8 (citations omitted).  Furthermore, the allegations gave "rise to a cogent and compelling inference that Barclays falsified the LIBOR submissions because it understood their likely effect on the market." *Id.* at 9 (citations omitted).  The Court refused to dismiss the claims for violations of section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 of a putative class of purchasers of American Depositary Shares of Barclays PLC.

In sum, the cases above make it apparent that Plaintiff should be allowed discovery.  Defendants' arguments claiming LIBOR was not adjusted upward during the trigger period and that it was the recession, and not Defendants' anticompetitive acts, that caused injury "involve questions of fact and should not be resolved upon a motion to dismiss," prior to discovery. *Id.* at 235.  It is Plaintiff's allegations that should be accepted as true, not Defendants'.  In addition, it would be fundamentally unjust to allow a case by a class of shareholders, who were some of the beneficiaries of inflated stock prices due to Barclays' LIBOR manipulation, to proceed in an attempt to recover for their injuries, but not allow a target of the scheme like Plaintiff to do the same.

///

///

**IV.     RICO DEVELOPMENT.**

The Court has suggested that the parties address *European Community v. RJR Nabisco, Inc.*, 764 F.3d 129 (2d Cir. 2014).

Defendants here challenge the FAC on the grounds that Plaintiff failed to sufficiently allege antitrust and RICO claims. Much of Defendants' argument centered on the "nerve center" test and the locale of the predicate acts, claiming that finding a domestic application of RICO based on where the injury occurred was inappropriate. Even prior to *European Community v. RJR Nabisco*, Plaintiff had properly alleged a RICO claim; fraud perpetrated in the U.S. by U.S. residents, subject to U.S. law and harming U.S. citizens, by manipulating the U.S. dollar LIBOR, does not require extraterritorial application. Plaintiff adequately briefed this issue in prior briefs. *European Community* makes it even clearer that the allegations of Plaintiff's FAC "allege sufficient domestic conduct…to sustain the application of RICO, notwithstanding that these predicates do not apply extraterritorially." *European Cmty.*, 764 F.3d at 141.[13] Plaintiff's RICO allegations are adequately pleaded and should not be dismissed.

Pursuant to *European Community*, the FAC alleges sufficient domestic conduct to sustain the application of RICO. In *European Community*, the Second Circuit held that "the extraterritorial application of RICO [is] coextensive with the extraterritorial application of the relevant predicate statutes." *Id.* at 139. Although *European Community* determined that wire fraud and mail fraud do not overcome the presumption against extraterritoriality, a complaint may still allege sufficient domestic conduct to sustain the application of RICO. *Id.* at 141. The Court

---

[13] The Second Circuit issued a short *per curiam* opinion when denying rehearing, holding that RICO did not require plaintiffs to allege a domestic injury if the underlying statute did not. *European Community v. RJR Nabisco, Inc.*, 2014 U.S. App. LEXIS 15998 (2d Cir. Aug. 20, 2014).

explained, "If domestic conduct satisfies every essential element to prove a violation of a United States statute that does not apply extraterritorially, that statute is violated even if some further conduct contributing to the violation occurred outside the United States." *Id.* at 142.  This is precisely the type of RICO violation that has occurred here.  As alleged in the FAC, Defendants' domestic conduct violated RICO; it would not matter if some further conduct contributing to the violation of RICO occurred in England or elsewhere.

In *European Community*, there were sufficient allegations of domestic conduct when the complaint alleged that: (1) "Defendants managed their global money laundering schemes from the United States through foreign travel and communications," (2) "the schemes themselves were directed at the United States and had substantial domestic effects," (3) Defendants "hatched schemes to defraud in the United States" and "used the U.S. mails and wires in furtherance of those schemes and with the intent to do so," and (4) Defendants "traveled from and to the United States in furtherance of their schemes." *Id.*

Judge Oetken recently applied *European Community* to determine that a complaint's allegations were sufficient to "render the underlying conduct 'domestic' enough to be actionable under RICO" when the Defendants allegedly: (1) engaged in unlawful activities "by using wire communications (including communications via telephone) originating from the United States," (2) "traveled to and from the United States," (3) "accepted and transmitted their ill-gotten gains to and from bank accounts in the United States," (4) directed "the day-to-day activities of [a corporation] from the United States," (5) "used wire communications (including communications via telephone) in interstate commerce to relay false information," and (6) were "believed to have placed these telephone calls from within the United States."  *Reich v. Lopez*, No. 13-CV-5307 (JPO), 2014 U.S. Dist. LEXIS 115079 *12-13; 2014 WL 4067179 (S.D.N.Y. Aug. 18, 2014)

(citations omitted).  The Court explained that "it is irrelevant that those statutes are further violated by conduct that is extraterritorial in nature."  *Id.* at *14.  The Court stressed that "it is not appropriate to determine the truth of Plaintiffs' allegations at the motion to dismiss stage."

> 'Should the pattern of conduct of certain Defendants or certain schemes prove to be extraterritorial' following discovery, the court may 'narrow the scope of this action accordingly, through either motions for (partial) summary judgment or through carefully tailored jury instructions.'

*Id.* at *14, *quoting European Cmty.*, 764 F.3d at 143.

Plaintiffs have alleged sufficient underlying domestic conduct, comparable to the conduct alleged in *European Community* and *Reich v. Lopez*.  Defendants engaged in a conspiracy to manipulate the LIBOR for the United States dollar, a scheme directed at the United States.  FAC ¶ 201.  Furthermore, (1) Defendants' collusive and manipulative acts took place in substantial part in the United States (FAC ¶8); (2) the scheme was conducted by persons and entities subject to the laws of the United States, including residents of the United States while in the United States (FAC ¶8; FAC ¶¶15-30); (3) the scheme affected the pricing of trillions of dollars' worth of financial transactions in the United States, including bank loans and municipal bonds (FAC ¶7); (4) the scheme had a substantial effect in the United States, including on Solow (FAC ¶¶8-9); (5) Solow posted his collateral in the United States, and applied for and received his loans in the United States from Defendant Citibank (FAC ¶¶9; 147); (6) Defendants committed mail fraud by sending documents regarding LIBOR borrowing rates and the Solow bonds and loans through the U.S. mail (FAC ¶¶160, 196); (7) Defendants committed wire fraud by transmitting documents regarding LIBOR borrowing rates and the Solow bonds and loans, including emails (FAC ¶197); and (8) Defendant Citibank caused Solow to transmit by means of wire over $100 million (FAC ¶147).  These allegations, if accepted as true, are more than sufficient domestic conduct to cause the conspiracy to be actionable under RICO.

If the FAC fails to sufficiently plead the RICO allegations, Plaintiffs request that the Court grant leave to amend the complaint in light of the new legal authority.  *See, e.g., Tymoshenko v. Firtash*, No. 11-CV-2794 (KMV), 2014 U.S. Dist. LEXIS 139266 (S.D.N.Y. Sept. 30, 2014) ("Plaintiffs likely drafted the SAC with the [prior] RICO extraterritoriality framework…in mind.  The Court now grants leave to amend the SAC so that Plaintiffs may reconsider their pleadings in light of *European Community*'s holding.") (citations omitted).

## V.   CONCLUSION.

Defendants' motion to dismiss fails in its entirety, which is made more evident by the recent developments and additional authorities outlined above.  Plaintiff has sufficiently pled claims for violations of the Sherman Act, RICO, and the New York Donnelly Act.  Defendants' motion should be denied.  In the event that the Court is inclined to grant any part of Defendants' motion, Plaintiff respectfully requests leave to amend.

DATED:  October 31, 2014                                Respectfully submitted,

                                                                              /s/ Daniel J. Mogin
                                                                        Daniel J. Mogin
                                                                        THE MOGIN LAW FIRM, P.C.
                                                                        707 Broadway, Suite 1000
                                                                        San Diego, CA 92101
                                                                        Telephone:  619/687-6611
                                                                        Facsimile:   619/687-6610
                                                                        dmogin@moginlaw.com


                                                                        Andrew W. Hayes
                                                                        ANDREW W. HAYES, ESQ.
                                                                        230 Park Avenue, 10th Floor
                                                                        New York, New York 10017
                                                                        Telephone: (917) 770-0180
                                                                        ahayes@andrewhayes.net

                                                                        *Attorneys for Plaintiff 7 West 57th Street Realty Company, LLC*

14