**COVINGTON**

BEIJING   BRUSSELS   LONDON   NEW YORK
SAN DIEGO   SAN FRANCISCO   SEOUL
SHANGHAI   SILICON VALLEY   WASHINGTON

Andrew A. Ruffino

Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
T +1 212 841 1097
aruffino@cov.com

By ECF

March 3, 2015

The Hon. Paul G. Gardephe
United States District Court
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street, Room 920
New York, New York 10007

Re:   7 West 57th Street Realty Company, LLC. v. Citigroup Inc., *et al.*,
      SDNY Case No. 13-cv-0981 (PGG)

Dear Judge Gardephe:

This firm is counsel to Citigroup Inc. and Citibank, N.A. in the above-referenced matter. I write on behalf of all Defendants in response to Plaintiff's letter of February 20, 2015 requesting that the Court accept Plaintiff's briefing regarding two recent decisions. Neither of the two decisions cited by Plaintiff undermine or provide a basis to deny Defendants' motion to dismiss.

I.   *Gelboim v. Bank of Am. Corp.*, **Supreme Court No. 13-1174, 2015 WL 248558 (Jan. 21, 2015).**

The Supreme Court in *Gelboim* held that plaintiffs were entitled to an immediate appeal from a final judgment dismissing their action, which alleged an antitrust claim only, notwithstanding the continued pendency of other *LIBOR* MDL actions that asserted other claims. Plaintiff does not argue that the Supreme Court's purely procedural ruling on the time for appeal in MDL proceedings casts any doubt on the correctness of Judge Buchwald's antitrust ruling. The Supreme Court said nothing about the merits of that decision.

II.  *In re Foreign Exchange Benchmark Rates Antitrust Litig.*, **No. 13-cv-07789-LGS, 2015 WL 363894 (S.D.N.Y. Jan. 28, 2015)**

The court in *Foreign Exchange* did not question Judge Buchwald's conclusion in the *LIBOR* MDL that the process of setting LIBOR inherently involves cooperation, not competition. Indeed, Judge Schofield confirmed that Judge Buchwald's holding "was explicitly based on that court's understanding that the LIBOR-setting process was a 'cooperative endeavor wherein otherwise-competing banks agreed to submit estimates of their borrowing costs … to facilitate the … calculation of an interest rate index.'" *In re Foreign Exchange Benchmark Rates Antitrust*

COVINGTON

Page 2

*Litig.,* No. 13-cv-7789-LGS, slip op. at 21, 2015 WL 363894 at *11 (S.D.N.Y. Jan. 28, 2015) (quoting *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 688 (S.D.N.Y. 2013) ("*LIBOR I*") (ellipses in original)).

      Rather, in *Foreign Exchange*, Judge Schofield denied defendants' motion to dismiss because she concluded that there were significant differences between the process of setting LIBOR and the foreign exchange benchmark (the "Fix"), which the court said "is set by actual transactions in a market where Defendants are supposed to be perpetually competing." *Id*. at *11. In contrast to the submissions in *LIBOR*, the court concluded that "the Fix is determined by the median price of actual [foreign exchange] transactions." *Id*. at *2.

      In any event, as explained in Defendants' previously submitted motion to dismiss briefs [Dkt. Nos. 115, 117, 121, 122], the Court need not even reach the question of whether *LIBOR I* was correctly decided because Plaintiff's antitrust claims are defective for other independent reasons, including: (1) Plaintiff's claims are time barred, (2) Plaintiff fails to plausibly allege the existence of a conspiracy, (3) Plaintiff's alleged injuries are too attenuated from LIBOR to provide any kind of antitrust standing, and (4) Plaintiff's claims are barred by *res judicata*.

Respectfully,

s/ Andrew A. Ruffino

Andrew A. Ruffino

cc:    All Counsel (by ECF)