UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| 7 WEST 57TH STREET REALTY COMPANY, LLC, a Delaware Limited Liability Company,<br><br>Plaintiff,<br><br>vs.<br><br>CITIGROUP, INC., CITIBANK, N.A., BANK OF AMERICA CORP., BANK OF AMERICA N.A., BARCLAYS BANK PLC, UBS AG, JPMORGAN CHASE & CO., JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, CREDIT SUISSE GROUP AG, BANK OF TOKYO-MITSUBISHI UFJ LTD., COÖPERATIEVE CENTRALE RAIFFEISEN-BOERENLEENBANK B.A., HSBC HOLDINGS PLC, HSBC BANK PLC, HBOS PLC, LLOYDS BANKING GROUP PLC, ROYAL BANK OF CANADA, THE NORINCHUKIN BANK, ROYAL BANK OF SCOTLAND GROUP, PLC, WESTLB AG, WESTDEUTSCHE IMMOBILIENBANK AG, DEUTSCHE BANK AG,<br><br>Defendants. | Civil Action No. 13-cv-0981<br><br>ECF Case<br><br>**ORAL ARGUMENT REQUESTED** |

**PLAINTIFF 7 WEST 57th STREET REALTY COMPANY LLC'S
REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE
SECOND AMENDED COMPLAINT[1]**

## I.  INTRODUCTION

The amendments in Plaintiff's Proposed Second Amended Complaint ("PSAC") respond precisely to the Court's March 31, 2015 Order, and Defendants have provided no reason for denying leave to amend. The new allegations demonstrate that: (1) each of the Multinational

---

[1] This Reply also responds to Defendants' supplemental letter brief filed on August 7, 2015. *See* ECF No. 183.

1

Bank Defendants ("MBDs") has subjected itself to jurisdiction before this Court; (2) the LIBOR-setting process is competitive for antitrust injury pleading purposes; (3) Plaintiff's request to re-plead its RICO claim is proper in light of recent decisions, as well-settled Second Circuit law and Rule 1 of the Federal Rules of Civil Procedure allowing the Court to modify its rulings at any point prior to final judgment; and (4) if the Court allows Plaintiff to amend its federal claims, then supplemental jurisdiction over the Donnelly Act claim follows.

Defendants conflate the applicable futility standard for amendments with the inapplicable standard for a motion to dismiss, ignoring the Second Circuit's liberal policy of freely granting leave to amend, particularly where, as here, it is the first request, presented in a timely fashion. *See Anderson New LLC v. Am Media Inc.*, 680 F.3d 162, 185-189 (2d Cir. 2012). Defendants' burden in opposition to this motion was to demonstrate that the proposed amendments do not address the Court's Order or would otherwise be improper, but they fail to meet that exacting standard. *See Refco Grp. Ltd. v. Cantor Fitzgerald, L.P.*, No. 13 Civ. 1654 (RA) (HBP), 2015 U.S. Dist. LEXIS 88121, *27 (S.D.N.Y. July 6, 2015) (proposed amendments are only futile if they fail to cure prior deficiencies or state a claim that has no "colorable merit"). *See also Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.3d 42, 50 (2d. Cir. 1991) (trial court abuses its discretion in denying leave to replead a claim where amendments supply the facts required to support the allegations and cure the defect). This is particularly important where, as here, Plaintiff's requests for both jurisdictional and substantive discovery have been denied. *See Carpenters Pension Trust Fund of St. Louis v. Barclays PLC*, 750 F.3d 227 (2d Cir. 2014) (dismissal of allegations concerning causation as a matter of law at the pleading stage, without the benefit of discovery, is improper).

Because Defendants cannot show that the proposed amendments are futile, prejudicial, or the product of undue delay or bad faith, they instead attempt to dismember each allegation in isolation and resort to misstating the PSAC's actual allegations. The four corners of the PSAC, however, allege both sufficient jurisdictional facts and sufficient antitrust injury. They are also not futile under a recent Second Circuit decision concerning the statute of limitations period for

LIBOR-related claims that explicitly rejected the reasoning of *LIBOR I*. Accordingly, Plaintiff respectfully requests that this Court allow it to file the PSAC.

## II.   ARGUMENT

### A. Plaintiff's Allegations Support Exercising Personal Jurisdiction

The PSAC properly alleges that the Multinational Bank Defendants are subject to personal jurisdiction in this Court. As detailed in both the PSAC and Plaintiffs' Motion, the MBDs have such extensive and substantial contacts with New York through their banking businesses that they are unquestionably subject to general jurisdiction in this Court. *See* PSAC ¶¶17-30. Even if this Court is reluctant to find general jurisdiction, the PSAC alleges ample suit-related contacts to justify the exercise of specific jurisdiction. *See id*. Defendants' claim that the PSAC is devoid of any of these facts is patently untrue: the chart attached as **Appendix A** identifies the specific paragraph numbers in the PSAC corresponding to the allegations concerning each MBDs' significant contacts. These activities collectively justify a finding of personal jurisdiction [*see King County v. IKB Deutsche Industriebank AG*, 712 F. Supp. 2d 104, 113 (S.D.N.Y. 2010) (The alleged "actions required the involvement of, and did involve, numerous entities in New York.")] and the MBDs should have foreseen having to answer for their behavior in New York. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985) ("So long as a commercial actor's efforts are 'purposely directed' toward residents of [a forum], we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there").

Courts in this Circuit have clarified on multiple occasions that, even in the wake of *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014) and *Gucci America, Inc. v. Weixing Li*, 768 F.3d 122 (2d Cir. 2014), general jurisdiction is not limited to only those forums where a corporation – particularly a large financial institution such as the MBDs – is incorporated or has its principal place of business. *See Hosking v. Hellas Telcoms (Lux.) II SCA*, 524 B.R. 488, 504-506 (Bankr. S.D.N.Y. 2015) ("*In re Hellas*") (citing *Daimler AG v. Bauman*, 134 S. Ct. 746, 760 (2014); *Vera v. Republic of Cuba*, 2015 U.S. Dist. LEXIS 32846 (S.D.N.Y. March 17, 2015). Contrary

to the MBDs' arguments, *In re Hellas* is instructive here and clarifies that, in New York, "general jurisdiction exists where such corporation's affiliations with the State are so 'continuous, and systematic' as to render [it] essentially at home in the forum State." *In re Hellas,* 524 B.R. at 505 (internal citation omitted). In fact, the *Hellas* court specifically found that MBD Deutsche Bank is subject to general jurisdiction in New York because of its "substantial, long term presence in the U.S. and New York". *In re Hellas,* 523 B.R. at 508. Similarly, the *Vera* court exercised general jurisdiction over a foreign financial institution, notwithstanding *Daimler* and *Gucci*, even though the foreign defendant was neither incorporated in nor had its principal place of business in New York. *Vera*, 2015 U.S. Dist. LEXIS 32846 at \*11-26. Relevant here, the decision in *Vera* was based in part on the foreign bank being registered and licensed with the NYDFS, as are most of the MBDs. *Id*. at 24-26 (registering with and obtaining a license from the NYDFS, as well as authorizing the Department to accept service of process on its behalf, subjects a plaintiff to general jurisdiction in New York in return for the right to operate a branch and conduct business there). "Foreign corporations which do business in New York are bound by the laws of both the state of New York and the United States… [and]…can both sue and be sued." *Id*. at 25 [citations omitted]. Moreover, *Gucci* is factually distinguishable from this case since, unlike the MBDs here, the lone *Gucci* defendant had a remarkably small presence in the United States.[2] *Gucci*, 768 F.3d at 135.[3]

Defendants urge the Court to examine each of Plaintiff's allegations in isolation in an effort to argue that, as a whole, the amendments do not support a finding of general jurisdiction. Opp. at 7. But the Second Circuit has consistently held that "even if 'certain categories of

---

[2] Whereas the *Gucci* defendant Bank of China only had four branches in the entire United States [*Gucci*, at 135], Multinational Bank Defendant Deutsche Bank, for example, maintains a U.S. headquarters in New York and employs more than 1,700 persons in that office alone, with assets of more than $152 billion. *See* PSAC ¶30.

[3] What is next, the domestic banks reincorporate in foreign jurisdictions to claim immunity to civil liability in the U.S.? Or make similar claims based on their extensive international operations and foreign subsidiaries? Neither *Daimler* nor *Gucci* come close to endorsing such a sweeping result, but that is precisely where the MBDs' arguments lead.

contacts alleged … might be insufficient to establish minimum contacts, when taken individually,' courts must always consider them in their totality." *Escambia County Utilities Authority v. Amerada Hess Corp. (In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*), MDL No. 1358, 2005 U.S. Dist. LEXIS 753, *35 (S.D.N.Y. Jan. 18, 2005) (*quoting Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 569 (2d Cir. 1996).

As for specific jurisdiction, the MBDs concede that the PSAC includes allegations that they employed traders based in or around New York who were involved in the USD LIBOR manipulation scandal, and their claim that the PSAC does not contain suit-related allegations is blatantly incorrect. Opp. at 9; PSAC ¶¶18, 22, 30. *See also* **Appendix A**. Taken all together, the extensive new allegations show that the MBDs' suit-related contacts are so pervasive as to amply warrant exercising personal jurisdiction over them.[4] Notwithstanding, the MBDs' exact contacts with the forum are irrelevant, as it is undisputed that the remaining Defendants have sufficient contacts with New York, and those contacts may be attributed for jurisdictional purposes to their co-conspirators, the MBDs. *See, e.g., Chrysler Capital Corp. v. Century Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y 1991). Notably, Plaintiff's additional jurisdictional allegations were found through public searches and were added without the aid of discovery, which is likely to reveal additional suit-related, New York-related, and U.S.-related contacts. Thus, at the very least, the proposed amendments are not futile.

### B. The Proposed Second Amended Complaint Alleges a Valid Antitrust Claim.

The allegations demonstrating the anticompetitive effects of Defendants' manipulation of LIBOR also squarely address the Order regarding Plaintiff's antitrust claim, and Defendants have not demonstrated that such amendments would be futile or otherwise prejudicial. As a threshold matter, this Court dismissed Plaintiffs' antitrust claim in large part based on *In re*

---

[4] To that end, Defendants' supplemental letter brief [ECF No. 183] is mostly irrelevant. Plaintiff believes that the general jurisdiction analysis to which Defendants refer is contrary to New York law for the reasons set forth above. Further, Defendants conceded that *LIBOR IV*, the case provided in the supplemental letter brief, does not address specific jurisdiction, whereas the PSAC contains substantial allegations regarding suit-relating contacts which support finding specific personal jurisdiction.

*LIBOR-Based Fin. Instruments Antitrust Litig.*, 935 F. Supp. 2d 666, 686 (S.D.N.Y. 2013) ("*LIBOR I*").  Plaintiff continues to assert that *LIBOR I* is inconsistent with well-established antitrust law and should not be followed here, including because the respective complaints in this action and *LIBOR I* are not identical, particularly as to antitrust injury.  Moreover, *LIBOR I* is still on appeal and the Second Circuit and other courts have already rejected its logic.

In particular, as discussed in Plaintiff's Motion, in *BPP Illinois, LLC v. The Royal Bank of Scotland Group PLC*, 603 Fed. Appx. 57 (2d Cir. N.Y. 2015) ("*BPP*"), the Second Circuit determined that, contrary to *LIBOR I*, a May 29, 2008 Wall Street Journal article did not constitute inquiry notice to the plaintiffs to start the statute of limitations on a LIBOR-related claim.  *Id* at 58-59. As here, the claim in *BPP* arose from a LIBOR-denominated loan made to the plaintiffs while defendant RBS was engaged in the LIBOR manipulation scandal.[5]  *BPP* further explains that requiring plaintiffs to make a showing of reasonable diligence in discovering their injury is premature at the motion to dismiss stage.  *Id*.  Defendants' efforts to distinguish *BPP* are wholly unavailing.  The Second Circuit did not limit its holding to the Pennsylvania statute of limitations or Pennsylvania common law, as Defendants now assert.  *Id*. Rather, the *BPP* court applied its ruling to Rule 12 motions to dismiss in general and what constitutes inquiry notice.  *Id*.  Likewise, in *Carpenters Pension Trust Fund of St. Louis*, *supra*, another lawsuit involving LIBOR manipulation allegations, the Second Circuit reversed the dismissal of a complaint based on the lower court's determination that, "as a matter of law and without discovery", the plaintiffs' allegations of causation were incorrect, holding that causation was "a question of fact that can be answered only upon a more fully developed record." 750 F.3d at 234-235. The same is true here for the market dynamics of LIBOR and their competitive nature and effects.

Defendants have not pointed to a single LIBOR-related case that has survived Second Circuit review, while the Circuit has already reversed decisions in other LIBOR-related lawsuits

---

5 See, *BPP Illinois LLC et al, v. The Royal Bank of Scotland Group PLC, et al.*, No. 1:13-cv-00638-JMF, Opinion and Order, pp. 2-5 (S.D.N.Y. Nov. 13, 2013) (ECF No. 44).

that applied the same reasoning of *LIBOR I*.  Even Judge Buchwald's recent *LIBOR IV* decision retreats from *LIBOR I*'s inquiry notice findings in light of *BPP*.[6]  In sum, because *LIBOR I* is currently under appellate review, LIBOR-related cases that applied similar reasoning have been reversed by the Circuit, and because the *LIBOR I* court has itself modified at least some of its rulings in light of the Second Circuit's holdings, it should not serve as a basis for deeming the proposed amendments here futile.

Like the Second Circuit, *In re Foreign Exchange Benchmark Antitrust Litig.*, also discussed in Plaintiff's Motion, explained that *LIBOR I's* reasoning concerning antitrust injury, including its analysis at the pleading stage of whether LIBOR-setting is a competitive process, is "unpersuasive" and relies on inapposite Supreme Court cases. *See* Motion, p. 9.

Defendants are also simply wrong in claiming that the PSAC is devoid of new allegations concerning the competitive nature of the LIBOR-setting process and antitrust injury [Opp. at 10] – it is brimming with such facts, including judicial admissions by several Defendants. Defendants separate Plaintiffs' allegations into two categories – "new" and "old" – claiming that the Court already summarily dismissed the "old" allegations and that the "new" allegations are not really "new". *See* Opp. at p. 10-13. The Order did not "reject" any allegations, but rather made the more limited determination that First Amended Complaint ("FAC") did not sufficiently explain that setting LIBOR was a competitive process. [Order at 35-36].  Plaintiff has added a host of additional facts expanding on the competitive nature of the LIBOR-setting process, many of which were taken from Defendants' own judicial admissions, and the totality of which – the old combined with the new – squarely respond to the Order.  *See* PSAC ¶¶40-43; 76-77; 84-86; 87-88; 164-165.

Defendants also ignore the documentary record by claiming that Deutsche Bank did not admit to harming competition.  Opp. at 12.  Deutsche Bank expressly admitted in its Consent Order with the NYDFS that it "coordinated its efforts with contributor panel banks in an effort to

---

[6] *See* p. 9, *infra*.

manipulate [LIBOR]," and that "the manipulation benefited certain Deutsche Bank trading positions by maximizing profits or minimizing losses to the detriment of counterparties, thereby harming consumers of financial products and services." *See* New York Dep't of Fin. Serv., Consent Order (April 23, 2015), available at http://www.dfs.ny.gov/about/ea/ea150423.pdf at pp. 1-2; *see also* PSAC at ¶2 (k). The Consent Order details how "Deutsche Bank traders and submitters made and received requests from traders at other contributor panel banks for submissions that would be favorable to their trading positions," and makes clear that Deutsche Bank harmed competition by manipulating LIBOR. The PSAC also includes similar allegations concerning Defendants UBS and Citibank which, when combined with the allegations previously included in the FAC, paint a clear picture that the LIBOR-setting process is in fact competitive[7] [*see* PSAC ¶¶76-77; 87-88] – more than enough for the pleading stage of this action. Thus, Defendants' contention that the proposed amendments "cannot raise a plausible claim of antitrust injury" [Opp. p. 12] is not only wrong, it is irrelevant for purposes of Plaintiff's Motion. *See Anderson New LLC*, *supra*, 680 F.3d at 185-189 (leave to amend should be freely granted).

### C. Leave to Amend Plaintiff's RICO Claim.

Plaintiff seeks the Court's permission to re-plead its RICO claim because, notwithstanding Defendants' efforts to minimize the significance of *BPP*, the Second Circuit's ruling is binding precedent. Since this Court dismissed Plaintiff's RICO claim based on the same May 29, 2008 article at issue in *BPP*, we respectfully submit that the Court should now consider this new, post-Order decision in determining whether Plaintiff may re-plead its RICO claim. *See New York v. Almy Bros.*, No. 90-cv-818, 1998 U.S. Dist. LEXIS 5469, *3-4 (N.D.N.Y. Apr. 15, 1998) ("the Second Circuit has made clear that 'until there is a final judgment in a case, an interlocutory ruling generally remains subject to reconsideration or modification.' [Citations.] 'This is fully consistent with the "well-established [rule] that the interlocutory orders and rulings

---

[7] Notably, former UBS trader Tom Hayes, discussed in the PSAC [¶¶89-93], was recently found guilty and sentenced to 14 years in prison for colluding with his colleagues – including counterparts at Defendants – to manipulate LIBOR.

8

made pre-trial by a district judge are subject to modification by the district judge at any time prior to final judgment[.]"''') (internal citations omitted).

As the Court is aware, and contrary to Defendants' assertion, *BPP*'s classification as a summary order is inconsequential: "Denying summary order precedential effect does not mean that the court considers itself free to rule differently in similar case" *Babb v. Colvin*, 2014 U.S. Dist. LEXIS 132770, fn.11 (N.D.N.Y. August 13, 2014), citing *Jackler v. Byrne*, 658 F.3d 225, 244 (2d. Cir. 2011) (summary order nearly identical to the case at hand therefore persuasive and directly on point). A summary order is based on, dictated by, and is an extension of pre-existing precedent. *See* 2d. Cir. Local Rule 32.1(b), Comment. Although it was inconvenient for Defendants to acknowledge in their supplemental letter brief [ECF No. 183], *LIBOR IV* recognizes that *BPP* requires modification of *LIBOR I*'s statute of limitations holding except as applied to Eurodollar traders in an exchange market. *See LIBOR IV* at p. 318-319 (ECF No. 183). Plaintiff here is not a Eurodollar trader; similar to the *BPP* plaintiffs, Mr. Solow had a LIBOR-denominated line of credit collateralized by a municipal bond portfolio, and the level of diligence of inquiry that applies to such a borrower has nothing in common with the inquiry obligations that may be imposed on a Eurodollar trader in an exchange market.

Moreover, as explained in Plaintiff's Motion, *BPP* applies in equal force to the Court's determination that Plaintiff's RICO claim is barred by res judicata, also an affirmative defense. *See* Motion, p.11; *see also Doe v, GTE Corp.*, 347 F.3d 655 (7th Cir. 2003) ("Affirmative defenses do not justify dismissal under Rule 12(b) (6)"), *citing Gomex v. Toledo*, 446 U.S. 635 (1980). This res judicata ruling is intertwined with the ruling on the statute of limitations. *See* Opinion, pp. 50.

This Court determined that res judicata barred Plaintiff's RICO claim, in part, because Defendants were in privity with Citibank for purposes of the prior litigation with Mr. Solow. However, such privity only bars relitigation of the *same* cause of action against a new defendant *known by a plaintiff* at the time of the first lawsuit. *See Central Hudson Gas & Elec. Corp. v. Empresa Naviera S.A.*, 56 F.3d 359 (2d Cir. 1995) (emphasis added) (res judicata not applicable

9

where plaintiff did not clearly have knowledge of the potentially liable parties in the first action and a finding of privity would hinder the vigorous pursuit of litigation).  A federal multi-party horizontal antitrust conspiracy claim is light-years removed from a single party state court debt-collection contract claim.  *BPP thus* precludes a pleading stage res judicata defense based on knowledge derived from the Wall Street Journal article, as neither the existence of the federal claims or the identities of Defendants in this action could possibly have been known to Plaintiff at the time of the first litigation for this type of over-arching privity to apply.  Indeed, a state law contract action cannot absolve co-conspirators of liability for federal antitrust claims with statutory joint and several liability.  *See, e.g.,* Phillip E. Areeda and Herbert Hovenkamp, Antitrust Law, ¶330(d) (in federal antitrust claims, "each co-conspirator can be held liable for the entire damage award even if that particular co-conspirator was responsible for only a small portion of the injury").  Nor could Plaintiff have been on inquiry notice in 2008.

Finally, Defendants attempt to avoid *World Wrestling Entertainment, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 508 (S.D.N.Y. 2006) ("*WWE*"),  and argue that they are not subject to a more stringent standard in establishing res judicata at this stage of the proceedings, because *WWE* is a pre-*Twombly* decision.  *See* Opp., p.17-18.  However, that argument confuses the *Twombly* standard with the more stringent burden that applies to Defendants here.  *Twombly* describes Plaintiff's affirmative pleading burden for claims, whereas *WWE* requires Defendants to prove "beyond doubt" that a plaintiff cannot surmount an affirmative defense at the motion to dismiss stage.  *See WWE*, 425 F. Supp. 3d at 508.  For these reasons, Plaintiff respectfully submits that the Court, following *BPP*, should allow it to re-plead the RICO claim.

**D. Donnelly Act Claim**

If the Court grants Plaintiff leave to amend its federal claims, Plaintiff also respectfully requests leave to re-allege its state law claim under New York's Donnelly Act.  This Court refused to extend supplemental jurisdiction over this claim based on its dismissal of Plaintiff's federal law claims. As the federal law claims have been remedied per the Court's Order, exercising jurisdiction over Plaintiff's Donnelly Act claim would be proper.

## III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests leave to file the PSAC, a true and corrected[8] clean copy of which is attached hereto as Exhibit 1.

DATED: August 10, 2015                                        Respectfully submitted,

                                                          /s/ Daniel J. Mogin
Daniel J. Mogin
THE MOGIN LAW FIRM, P.C.
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone: 619-687-6611
Facsimile: 619-687-6610
dmogin@moginlaw.com

Andrew W. Hayes
ANDREW W. HAYES, ESQ.
230 Park Avenue, 10th Floor
New York, New York 10017
Telephone: 917-770-0180
ahayes@andrewhayes.net

*Attorneys for Plaintiff 7 West 57th Street Realty Company, LLC*

---

[8] Plaintiff corrected the PSAC to eliminate a graph inadvertently included in duplicate on page 80 of the redlined version submitted with Plaintiff's Motion.

**Appendix A**

| Multinational Bank Defendant | Has had a presence in New York for decades. | New York-based employees requested favorable LIBOR submissions. | Super-intendent of the NYDFS is designated agent for service of process. | Entered into credit agreements with New York-based entities with interest rates tied to LIBOR. | Filed lawsuits in this New York availing itself of the privileges and protections of the state. | Listed on the NYSE in the form of ADRs, governed by NY law, files with SEC and subject to federal law. | Registered and subject to the jurisdiction of the NYDFS. |
|---|---|---|---|---|---|---|---|
| Barclays Bank PLC | ¶17 | ¶17 | ¶17 | ¶17 | ¶17 | ¶17 | ¶17 |
| UBS AG | | ¶18 | | ¶18 | ¶18 | | |
| Credit Suisse Group AG | ¶20 | | ¶20 | | | ¶20 | |
| Bank of Tokyo-Mistubishi UFJ Ltd. | ¶21 | | ¶21 | | ¶21 | | ¶21 |
| Cooperatieve Centrale Raiffeisen-BoerenleenBank B.A. | ¶22 | ¶22 | ¶22 | ¶22 | ¶22 | | ¶22 |
| HSBC | ¶23(d) | | ¶23(d) | | ¶23(d) | ¶23(d) | ¶23(d) |
| HBOS PLC | | | | | | | ¶24 |
| Lloyds Banking Group PLC | ¶25 | | ¶25 | ¶25 | | ¶25 | ¶25 |
| Royal Bank of Canada | | | | ¶26 | ¶26 | ¶26 | |
| Norinchukin Bank | ¶27 | | ¶27 | ¶27 | | | ¶27 |
| Royal Bank of Scotland Group, PLC | ¶28 | | ¶28 | ¶28 | ¶28 | ¶28 | ¶28 |
| WestLB AG | ¶29(a) | | ¶29(a) | ¶29(a) | ¶29(a) | | ¶29(a) |
| WestDeutsche Immobilienbank AG | | | ¶29(b) | | ¶29(b) | | |
| Duetsche Bank AG | ¶30(b) | ¶30(d) | | ¶30(c) | ¶30(c) | ¶30(b) | ¶30(b) |